Argued May 8, affirmed June 19, 1975

SMITH ET UX, *Appellants, v.* MOORE MILL & LUMBER CO., *Respondent.*

536 P2d 1238

*Lynne W. McNutt* of McNutt, Gant & Ormsbee, Coos Bay, argued the cause for appellants. Also on the briefs was Maurice V. Engelgau, Coquille.

*Peter C. Richter* of Miller, Anderson, Nash, Yerke & Wiener, Portland, argued the cause for respondent. Also on the brief was Norman J. Wiener, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action to recover damages for the removal of timber from plaintiffs' land by defendant.

The decisive question is the location of the boundary between the parties' adjoining parcels of timberland. The trial court, as the trier of fact, found that plaintiffs had failed to sustain their burden of proving their allegations of trespass by a preponderance of the evidence, except for plaintiffs' timber of the value of $2,247 which defendant admitted it had cut. The court, therefore, awarded double damages of $4,454 pursuant to ORS 105.810 and ORS 105.815.[1] Plaintiffs appeal.

The parties own adjoining parcels of timberland in Section 34, Township 30 South, Range 14 West of the Willamette Meridian in Curry County, Oregon (see map). Defendant's parcel, known as the Denton Tract, is the South half of the Northeast quarter, and the North half of the Southeast quarter of Section 34. Plaintiffs' parcel consists of the Northwest quarter, and the North half of the Northeast quarter of Section 34. Plaintiffs claim that defendant removed trees from plaintiffs' eastern boundary in 1970. Defendant denies this except to the extent of the admission mentioned above. The resolution of this conflict depends

[1] ORS 105.810 provides: "Except as provided in ORS 477.090, whenever any person, without lawful authority, * * * cuts down, girdles or otherwise injures or carries off any tree, timber or shrub on the land of another person, * * * in an action by such person, * * * against the person committing such trespasses if judgment is given for the plaintiff, it shall be given for treble the amount of damages claimed, or assessed for the trespass. In any such action, upon plaintiff's proof of his ownership of the premises and the commission by the defendant of any of the acts mentioned in this section, it is prima facie evidence that the acts were committed by the defendant wilfully, intentionally and without plaintiff's consent.

ORS 105.815 provides: "If, upon the trial of an action included in ORS 105.810, it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, or that the tree or timber was taken from uninclosed woodland for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall be given for double damages."

upon the location of the boundary between the eastern and western half of Section 34.

Defendant's position is consistent with a survey

made by Curry County Surveyor, D. Cunniff, in 1921, in which he set the Northeast, Northwest and North quarter corners of Section 34. This survey has been followed and relied upon by subsequent surveyors. Plaintiffs' position is based upon a survey made by Louis Prahar in 1971. Mr. Prahar determined the Northern quarter corner of Section 34 to be approximately 96 feet to the south and 110 feet to the east of the location determined and marked by Cunniff.

Plaintiffs contend that the Prahar survey must be preferred over the Cunniff survey because Prahar followed the rules for locating corners promulgated by the U. S. Department of the Interior (currently embodied in the Manual of Instructions for the Survey of the Public Lands of the United States 1947, United States Department of the Interior, Bureau of Land Management)[2] as required by statute,[3] whereas Cunniff did not.

The evidence is clear that Cunniff was unable to find the original federal survey monuments of the North quarter corner in 1921, or evidence of its location. Thus the corner was "lost."[4] It is equally cer-

---

[2] The 1909 edition of the rules, in effect in 1921, were substantially indentical.

[3] ORS 209.070 (6) and ORS 209.250 (1). See ORS 209.200:

"In the resurvey of lands surveyed under the authority of the United States, the county surveyor shall observe the following rules:

"(1) Section and quarter-section corners, and all other corners established by the government survey, must stand as the true corners.

"(2) They must be reestablished at the identical spot where the original corner was located by the government survey, when this can be determined.

"(3) When this cannot be done, then such corners must be reestablished according to the government field notes, adopting proportionate measurements where the present measurements differ from those given in the field notes."

[4] Manual of Instructions for the Survey of the Public Lands

tain that Cunniff did not employ the double proportionate method required by the Manual for restoration of the lost corner.[⑤] He failed to first locate the nearest existent corners, both north and south and east and west, from which to run the lines in establishing the lost corners which he purported to locate.

It appears, however, that Prahar's survey suffers from precisely the same flaw. Although he established his east-west axis from the location of the North quarter corner of Section 34 by locating existing government corners, he established his north-south axis by using the Northwest corner of Section 27, which was not an original corner but one established by Cunniff and which he did not purport to locate by the double proportionate method.

Prahar attempted to justify his use of the corner by arguing that he was able to locate it by collateral evidence. It is not entirely clear whether this reliance upon collateral evidence was based upon the theory that the Northwest corner of Section 27 was existent or "obliterated."[⑥] Regardless of the theory,

---

of the United States 1947, § 360, p. 289: *"A lost corner is a point of a survey whose position can not be determined, beyond reasonable doubt, either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position, and whose location can be restored only by reference to one or more interdependent corners."*

[⑥] Section 370 of the Manual provides, as follows:

*"A lost interior corner of four sections will be restored by double proportionate measurement.*

"When a number of interior corners of four sections and the intermediate quarter-section corners, are missing on all sides of the one sought to be reestablished, the entire distance must, of course, be measured between the nearest identified corners both north and south, and east and west, in accordance with the rule laid down, after first relocating the required lost section corners on the township exteriors."

[⑥] *See* Section 355 of the Manual: *"An obliterated corner is one at whose point there are no remaining traces of the monu-*

*"A position that depends upon the use of collateral evidence can be accepted only as duly supported, generally through proper relation to known corners, and agreement with the field notes regarding distances to natural objects, stream crossings, line trees and off-line tree blazes, etc., or unquestionable testimony."*[⑦]

Prahar's decision to rely upon Cunniff's location of the Northwest corner of Section 27, while rejecting his location of other corners, was based upon its location on a fence line which "Norman Smith always considered his corner and everyone else considered his corner," and the fact that Cunniff's corner was within 16 feet of two miles measured from an established corner which is theoretically two miles away, an extremely small variance in surveying.

The problem with the extrinsic evidence relied upon, however, is that it does not refer to the location of the *original* corner. Mr. Smith's hearsay insistence on the location of his corner as related by Prahar at trial does not purport to reveal any knowledge upon his or any other living person's part of the location of the original government survey monument. On the contrary, given the fact that Cunniff was unable to relocate the original 1879 government corner through extrinsic evidence in 1921, it is highly unlikely that anyone knew in 1971 where that corner had been. Mr. Smith's statements to Prahar would seem, therefore, to evidence a practical location of the boundary, or

---

*ment, or its accessories, but whose location has been perpetuated, or the point for which may be recovered beyond reasonable doubt, by the acts and testimony of the interested landowners, competent surveyors, or other qualified local authorities, or witnesses, or by some acceptable record evidence."*

[⑦] Manual, Section 355. The requirements of Section 360, *supra* note 4, are essentially similar in allowing use of collateral evidence only if it establishes the original location beyond a reasonable doubt.

more likely, a reliance on the Cunniff survey which was shown to have been carried out improperly.

Prahar, himself, as much as admitted that the evidence upon which he relied was insufficient to satisfy the requirement of the Manual for either obliterated or existent corners. On re-direct examination, the following exchange took place:

"Q. Is that evidence which you have recited about the northwest corner of 27 considered 'other competent evidence of the location of a corner' as recited in the Manual of Surveying Instructions?

"A. Technically speaking, I don't think so, sir. The technical language in that means that when you are relocating the original corner that if somebody will testify that they knew it was over there next to the bank that would be the other circumstances, and this doesn't fall into that category. This was set erroneously or not by the proper proceedings and subsequently accepted by other means and so forth, by usage."

In effect, Prahar established the northern terminus of his north-south axis on the basis of local acquiescence rather than a method required by the Manual. Thus, his location of the northern quarter-corner of Section 34 is as unreliable as Cunniff's.

We do not need to determine that Cunniff's survey was correct; we need only find that plaintiffs did not establish the boundary claimed by them to be the true line because in the absence of such proof they fail to make out their case.

Affirmed.